# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# CENTRAL DIVISION
# AT LEXINGTON

**CIVIL ACTION NO. 13-252-DLB**

**MICHAEL T. JOHNS**                                                                      **PLAINTIFF**

**vs.**                           **<u>MEMORANDUM OPINION AND ORDER</u>**

**CAROLYN COLVIN, Acting**
**Commissioner of Social Security**                                        **DEFENDANT**

\*\*\*  \*\*\*  \*\*\*  \*\*\*

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record and the parties' dispositive motions, will affirm the Commissioner's decision, as it is supported by substantial evidence.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Michael Johns filed applications for Disability Insurance Benefits and Supplemental Security Income on March 2, 2011, alleging a disability onset date of October 1, 2007. (Tr. 176-77, 224). At the time of filing, Plaintiff was 42 years old with a tenth grade education, and had previously worked as a package sorter and construction worker. (Tr. 176, 33). Plaintiff alleges he is unable to work due to injuries in both shoulders, back, and neck, numbness in his left hand, high blood pressure, and bullets lodged in his scapula and sternum. (Tr. 228).

Plaintiff's applications were denied initially and again on reconsideration (Tr. 70-71). At Plaintiff's request, an administrative hearing was conducted on June 25, 2012 before Administrative Law Judge (ALJ) Roger L. Reynolds. (Tr. 32-54). On July 5, 2012, ALJ Reynolds ruled that Plaintiff was not disabled under the Social Security Act and therefore not entitled to SSI or DIB. (Tr. 24). The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on July 9, 2013. (Tr. 1).

The present action was filed on August 8, 2013 (Doc. # 1). This matter has culminated in cross-motions for summary judgment, which are now ripe for adjudication. (Docs. # 9, 12).

## II. DISCUSSION

### A. Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Sec'y of Health & Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See id.* Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *See Her v. Comm'r of Soc. Sec.,* 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis. Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of the claimant's impairments are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform his past relevant work; and Step 5, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *See Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.,* 14 F.3d 1107, 1110 (6th Cir. 1994).

### B. The ALJ's Determination

At Step 1, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 1, 2007, the alleged onset date. (Tr. 16). At Step 2, the ALJ determined that Plaintiff had the following severe impairments: degenerative disc disease of the cervical and lumbar spine, status post discectomy and fusion surgeries of the C5/C6 and C6/7 levels of the cervical spine and the L5/S1 level of the lumbar spine; bilateral shoulder degenerative joint disease, status post left shoulder acromioclavicular arthroscopic surgery; and status post gunshot wounds to the left hand and right shoulder with retained bullet fragments. (Tr. 16-17) However, at Step 3 the ALJ concluded that none of these impairments or combination of impairments meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 18).

At Step 4, the ALJ found that Plaintiff has the residual functional capacity (RFC) to perform a limited range of light and sedentary work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) with the following limitations: no climbing ropes, ladders or scaffolds; no

3

work with hands over the head; no exposure to concentrated vibration, temperature extremes or industrial hazards; only occasional stooping, kneeling, crouching or crawling; and no work requiring frequent turning of the head. (Tr. 20)

At Step 5, the ALJ found that Plaintiff was 39 years old on the alleged onset date, which is defined as a younger individual. (Tr. 22). The ALJ also found Plaintiff to have a limited education with the ability to communicate in English. (*Id.*). Relying on the testimony of a vocational expert (VE) and considering Plaintiff's age, education, work experience and RFC, the ALJ determined that Plaintiff could perform a significant number of jobs in the national economy. (Tr. 23). ALJ Reynolds thus concluded that Plaintiff was not under a disability, as defined in the Social Security Act, from the alleged onset date through the date of his decision. (Tr. 23).

**C.     Analysis**

Plaintiff identifies four issues on appeal. First, Plaintiff argues that the ALJ's RFC assessment is not supported by substantial evidence.[1] Second, Plaintiff contends that the ALJ violated 20 C.F.R. § 404.1545(3) by failing to have him reviewed by a consultative examiner. Third, Plaintiff argues that the ALJ failed to give adequate reasons for discounting the opinions of consultative examiners, Dr. James Owen and Dr. David Jackson, who each found that Plaintiff's impairments prevented him from working. Finally, Plaintiff believes the ALJ erred in relying on the VE's response to an improper hypothetical. Each of these arguments will be addressed in turn.

---

[1] Plaintiff presents this argument twice in his brief, once as an argument that "the ALJ failed to base the decision on all the substantial evidence" and again as a claim that "the ALJ failed to assess a residual functional capacity based upon all the substantial evidence." The Court will consider these duplicative arguments together.

### 1. The ALJ's RFC assessment is supported by substantial evidence

Plaintiff argues that the ALJ's RFC assessment is not supported by substantial evidence. Instead, Plaintiff assert that the assessment is based entirely on an erroneous understanding of his activities of daily living, and finds no support in the objective medical evidence. If the ALJ had considered all of the evidence, including Plaintiff's long history of back, neck, and hand surgeries, Plaintiff believes the ALJ would have been left to conclude that he is unable to work.

As an initial matter, Plaintiff is incorrect in his assertion that the ALJ reached his RFC assessment without considering any of the objective medical evidence. While the ALJ placed significant weight on Plaintiff's activities of daily living ("ADLs"), he also considered Plaintiff long history of surgeries, physical therapy and follow-up treatments. (Tr. 18). He noted that Plaintiff has had five back surgeries between 2001 and 2011. (Tr. 18). Additionally, the ALJ noted that Plaintiff was evaluated for chronic neck pain and then discussed the results of a neck CT scan that showed "*very* mild cervical stenosis secondary to ostephytes and degenerative disc diseases *without significant* neural compression." (*Id.*) (emphasis added). Moreover, the ALJ discussed Plaintiff's complaints of numbness in his hand, as well as physical examinations of the hand that revealed "good ranges of motion of the MP/IP joints of the thumb and digits." (*Id.*). Finally, the ALJ mentioned Plaintiff's most recent cervical fusion as well as the neurosurgeon's observations that "[Plaintiff's] post-operative x-rays look good. His wound is healing well. His pain is substantially relieved." (*Id.*). This discussion indicates that the ALJ considered both the relevant medical evidence and "other evidence" as he was required to do by the regulations. *See* 20 C.F.R. § 404.1545(a)(1) and (a)(3).

The question, then, is whether the ALJ's RFC assessment is supported by substantial evidence. He concluded that Plaintiff is capable of performing "a limited range of light and sedentary work" with certain additional limitations. (Tr. 20). This RFC assessment is rather odd because it does not place Plaintiff squarely and exclusively within either functional capacity. But because a person capable of performing light work can also perform sedentary work,[2] the Court assumes the ALJ found that Plaintiff was capable of performing light work with limitations. *See* 20 C.F.R. § 404.1567(b). "Light work" is defined as:

> [L]ifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

*Id.* Additionally, the ALJ added the following limitations: no climbing ropes, ladders or scaffolds; no work with hands over the head; no exposure to concentrated vibration, temperature extremes or industrial hazards; only occasional stooping, kneeling, crouching or crawling; and no work requiring frequent turning of the head. (Tr. 20).

Plaintiff, no doubt, is limited by his back, neck, and hand pain. He has endured numerous surgeries to relieve the pain in his back and neck. However, Plaintiff's argument assumes that because he has had multiple surgeries, he must now be unable to work. The

---

[2] A person capable of performing light work may not be able to perform fine dexterity movements or sit for long periods of time, as would a person capable of performing sedentary work. 20 C.F.R. § 404.1567(b)

objective medical evidence suggests the contrary: Plaintiff's multiple surgeries and treatment have improved his back, neck, and hand pain to some degree.

First, as the ALJ noted, Plaintiff's activities of daily living show that he is capable of performing light work with additional limitations. On April 27, 2010, Plaintiff reported to a physical therapist that he feels some pain while performing farm work and driving a tractor. (Tr. 1065). He also reported that he recently purchased an elliptical trainer and "corner gym" weights, and had begun an exercise routine. (Tr. 1142). Over a year later, treatment notes indicate that Plaintiff was remodeling his house. (Tr. 1082). Finally, Plaintiff admitted that he frequently spends time on his wife's houseboat. (Tr. 41).

In his motion for summary judgment, Plaintiff argues that he has not farmed or remodeled his home since the alleged onset date, contrary to the ALJ's findings. He points to his testimony at his administrative hearing, which suggests that he has not farmed since his grandfather passed away – before the onset date – and that he had contractors remodel his home. He also offers an affidavit from his wife to support his testimony. However, the ALJ implicitly rejected Plaintiff's testimony, finding that it was merely a self-serving attempt to skirt the evidence in the record. Despite Plaintiff's testimony to the contrary, substantial evidence supports the ALJ's decision that Plaintiff engaged in activities of daily living that are consistent with "light work."

Objective medical evidence also supports the ALJ's RFC assessment. On February 2, 2006, Plaintiff reported to Dr. James Bean after undergoing a fusion of the C5/C6, still complaining of pain. Dr. Bean found that "the fusion at C5/C6 looks fairly normal in appearance and the adjacent disc spaces look unremarkable." (Tr. 666). He was thus unable to determine the cause of Plaintiff's pain, and suggested that Plaintiff undergo

7

physical therapy or chiropractic treatment. Notably, Dr. Bean reported that Plaintiff experiences increased pain when his work has excessive physical requirements, but the pain does not prevent him from completing the tasks. (*Id.*).

Later, on January 7, 2008, after his most recent surgery to relieve back, neck, and shoulder pain – an anterior cervical discectomy – Dr. William Brooks noted that although Plaintiff still "harbors *some* neck pain," "[h]e has fairly good range of motion of the cervical spine," "[h]is grips are equal," and "[t]here is no motor weaknesses in the upper extremities." (Tr. 656) (emphasis added). Plaintiff returned to Dr. Bean a month later, who noted that Plaintiff's "postop x-rays look good" and that "[h]is pain is substantially relieved." (Tr. 654). Each of these reports indicate that Plaintiff's surgeries were successful to some degree in that they relieved his pain and improved his functional abilities.

As noted by the ALJ, Plaintiff visited Dr. Karin Swartz of the Kentucky Neurosciences Institute on September 28, 2009, again complaining of back and neck pain. Dr. Swartz observed that Plaintiff's motor strength was normal and intact in all four extremities, his reflexes were symmetric in all four extremities, his posture was upright, and he had normal gait and station. (Tr. 1030). Additionally, Dr. Swartz reviewed a CT scan performed on June 5, 2009, which "revealed some *very mild* cervical stenosis secondary to osteophytes and degenerative disk disease – *no* significant neural compression." (*Id.*) (emphasis added). Based on these findings, the doctor opined that additional surgery was not necessary. She instead encouraged Plaintiff to exercise on his own by taking up pilates, tai chi and pool exercises. (*Id.*). Like the notes from his neurosurgeons, Dr. Swartz's opinion also indicates that Plaintiff has some functional abilities despite his pain.

In April 2010, Plaintiff followed Dr. Swartz's advice and began physical therapy. The physical therapist's notes confirm that Plaintiff's back pain has improved since his surgeries, although it is not entirely gone. (Tr. 1142). This note, as well as those previously discussed, show that the surgeries have improved Plaintiff's condition. More importantly, they provide substantial evidence that Plaintiff has some functional abilities despite his back and neck pain.

The ALJ also observed Plaintiff during the administrative hearing conducted on June 25, 2012. (Tr. 32-54). That hearing lasted approximately forty minutes. Over the course of the hearing, the ALJ found that Plaintiff did not appear to be in outward distress and that he responded appropriately to questions without any indication that he was distracted. This, too, belies Plaintiff's complaints that the pain in his back and neck is disabling.

The objective medical evidence also suggests that Plaintiff's impairments in his hand do not keep him from performing light work. Although Plaintiff reports numbness and pain in his left hand, doctors opined that Plaintiff has good hand function and grip strength. In 2006, Plaintiff was described as having "good range of motion to MP/IP joints of the thumb and digits." (Tr. 1089). In April 2010, Plaintiff's grip strength was described as "not too bad, 4+/5." (Tr. 1076). Then, in November 2012, Orthopedic Doctor John Balthrop twice noted that Plaintiff had "[n]ormal elbow, wrist and hand function." (Tr. 1223, 1224). All of this evidence supports the ALJ's finding that Plaintiff can lift weight at the light work level with the exception that he cannot work with his hands over his head. As a result, the ALJ's RFC assessment is supported by substantial evidence; Plaintiff's claim to the contrary fails.

## 2. The ALJ did not violate 20 C.F.R. § 404.1545(3) by failing to have Plaintiff examined by a consultative examiner

Plaintiff's second argument is that the ALJ violated 20 C.F.R. § 404.1545(3) by failing to send him to a consultative examiner. The ALJ rejected the opinions of both consultative examiners that examined Plaintiff at his own expense. Because the ALJ rejected both of these opinions, Plaintiff believes the regulations required the ALJ to send him to another consultative examiner.

Plaintiff has the burden of providing a complete record, which is defined as evidence complete and detailed enough to enable the Secretary to make a disability determination. *Landsaw v. Sec. of Health and Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986). The ALJ, in turn, has the duty to conduct a full inquiry. *Id.* As part of the "full inquiry," the regulations do not require the ALJ to refer a claimant to a consultative examiner. *Id.* Instead, the regulations merely grant the ALJ the authority to do so "if the existing medical sources do not contain sufficient evidence to make a determination." *Id.* The ALJ does not commit reversible error by failing to send a claimant to a consultative examiner so long as "the evidence in the record upon which the [ALJ] based his denial of benefits fully developed the facts necessary to make that determination." *Id.* (quoting *Turner v. Califano*, 563 F.2d 669, 671 (5th Cir. 1977)); *see also Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 32 (2d Cir. 2013) ("[A]n ALJ is not required to order a consultative examination if the facts do not warrant or suggest the need for it.").

Here, the record contained sufficient evidence from medical sources for the ALJ to make a disability determination. As previously explained, the ALJ based his decision, in part, on treatment records that showed Plaintiff's surgeries and treatments had improved

his pain and functional abilities. With this evidence, the ALJ did not need to have Plaintiff reviewed by a consultative examiner. Therefore, Plaintiff's second claim of error fails.

### 3. The ALJ gave sufficient reasons for rejecting the opinions of Plaintiff's consultative examiners

As his third claim of error, Plaintiff argues the ALJ failed to give sufficient reasons for rejecting the opinions of Plaintiff's consultative examiners, Dr. James Owen and Dr. David Jackson. Both examiners found that Plaintiff was unable to work. Plaintiff believes the ALJ rejected those opinions solely because they are inconsistent with his activities of daily living – farming, remodeling a house, and spending time on a house boat. Plaintiff maintains that he does not farm and did not remodel his home; thus, the ALJ's reasoning for rejecting the consultative examiners' opinions was insufficient.

Pursuant to regulations, the ALJ was required to explain the weight given to the opinions of Dr. Owen and Dr. Jackson. 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii). As consultative examiners, the ALJ was not bound by either of their opinions, nor was he required to consider their ultimate conclusions that Plaintiff was disabled. 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i). Rather, he was to consider their opinions based on the doctors' medical expertise, the supporting evidence in the case record, supporting explanations provided by the examiners, and any other factor. 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii).

Contrary to Plaintiff's argument, the ALJ rejected Dr. Owen's and Dr. Jackson's opinions because they were inconsistent with Plaintiff's activities of daily living <u>and</u> the objective medical evidence. Plaintiff's argument, it seems, is based on the ALJ's first discussion of the doctor's opinions. There, the ALJ admittedly relied solely on Plaintiff's

activities of daily living to reject the consultative examiner's opinions. (Tr. 19). However, the ALJ returned to the consultative examiners' opinions later in his decision and provided additional grounds for rejecting those opinions:

> As for the opinion evidence, although several physicians have opined the claimant is disabled, these statements are based on the medical evidence of record rather than the activities of daily living, which indicate Mr. Johns has recently been active remodeling a house, working a 100 acre farm, and spending his weekends on his wife's houseboat. The medical evidence seems to point to a younger individual with a significant degree of stamina. *All recent imaging of the cervical and lumbar spine show the claimant's fusions are solid with all hardware in place. The claimant's physical examination in Exhibit 12F showed no neurological findings and no evidence of radioculopathy or myelopathy; the claimant was advised to wean himself off narcotics and to get into Tai Chi or pilates.*

(Tr. 22) (emphasis added). This evidence, as well as the evidence previously discussed, amounts to substantial evidence in favor of the ALJ's decision to reject the consultative examiners' opinions.

Plaintiff's argument deserves one final comment. Plaintiff continues to maintain that he does not farm and that he never remodeled a home. Thus, he contends that these activities cannot be the basis for rejecting his consultative examiners' opinions. However, as the Court previously found, substantial evidence supports the ALJ's conclusion that Plaintiff had, in fact, engaged in those activities. Therefore, the ALJ did not err in relying on Plaintiff's activities of daily living as a basis for discrediting the opinions of the consultative examiners.

### 4. The ALJ appropriately relied on the Vocational Expert's testimony

As his final claim of error, Plaintiff argues that the ALJ did not accurately describe his physical limitations in posing a hypothetical to the vocational expert. Specifically,

Plaintiff believes the ALJ should have included manipulative limitations of his hand in the hypothetical. Without this limitation being included in the hypothetical, Plaintiff believes the VE's testimony could not provide substantial evidence that he was capable of performing a significant number of jobs in the national economy.

"A vocational expert's testimony concerning the availability of suitable work may constitute substantial evidence where the testimony is elicited in response to a hypothetical question that accurately sets forth the plaintiff's physical and mental impairments." *Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001). The Court has already concluded that the ALJ did not err in assessing Plaintiff's physical and mental limitations. Specifically as to Plaintiff's hand impairment, the objective medical evidence indicates that although he suffers pain and numbness, he has good hand strength and manipulation. The question, then, is whether the ALJ accurately described these findings in his hypothetical to the VE.

The ALJ posed the following hypothetical to the VE:

> If we assume, first of all, a person of Mr. Johns' age, education and experience with a capacity to lift and carry 10 pounds frequently, up to 20 pounds occasionally; sitting, standing, walking up to six hours each; no work with hands over the head; no climbing of ropes, ladders, or scaffolds; no exposure to concentrated vibration, temperature extremes or industrial hazards; occasional stooping, kneeling, crouching or crawling; no work requiring frequent turning of the head . . . Are there any jobs that could be performed with those limitations?

(Tr. 51-52). This hypothetical is entirely consistent with the ALJ's RFC assessment, which the Court has already found to be supported by substantial evidence. As such, the ALJ was entitled to rely on the VE's response to the hypothetical.

13

## III. CONCLUSION

Accordingly, for the reasons stated herein,

**IT IS ORDERED** that:

(1) The Commissioner's Motion for Summary Judgment (Doc. # 12) is hereby **GRANTED**;

(2) Plaintiff's Motion for Summary Judgment (Doc. # 9) is hereby **DENIED**; and

(3) A Judgment shall be entered contemporaneously with this opinion.

This 12th day of August, 2014.



Signed By:
David L. Bunning
United States District Judge

G:\DATA\SocialSecurity\MOOs\Lexington\5-13-252 Johns MOO.wpd